Gulf, Colorado & Santa Fe Railway Company v. B. V. Russell.

Decided February 15, 1905.

Passenger—Carrier—Ejection from Train—Damages.

Evidence considered under which it is held that the wrongful ejection of plaintiff from a passenger train, done by the conductor under mistake as to his rights under the ticket which he held, and without discourtesy or violence, did not support a recovery of damages in the sum of $400.

Appeal from the County Court of Bell. Tried below before Hon. G. M. Felts.

*J. W. Terry* and *A. H. Culwell,* for appellant.—Should it be held that there was a technical liability, under the facts of this case, yet the appellee was only entitled to such an amount as would fairly compensate him for the loss and injury done, and the verdict in this case, in the sum of $400, was and is more than was authorized in any view of the case under the evidence. As shown by the facts, a judgment in such an amount is grossly excessive, unreasonable and oppressive. Texas & P. Ry. Co. v. Dennis, 4 Texas Civ. App., 90.

*A. L. Curtis* and *J. B. McMahon,* for appellee.—The verdict of the jury for $400 is not excessive, unreasonable or oppressive, but is a fair and just verdict, rendered by the jury solely upon the facts in the case, without bias or prejudice, and their verdict is amply sustained by the evidence, and the same should be sustained. Atchison, T. & S. F. Ry. Co. v. Cuniffe, 57 S. W. Rep., 692; El Paso Elec. Ry. Co. v. Alderete, 36 Texas Civ. App., 142, 81 S. W. Rep., 1246; Texas & P. Ry. Co. v. Lynch, 73 S. W. Rep., 65; International & G. N. R. R. Co. v. Wilkes, 68 Texas, 617, 5 S. W. Rep., 491.

KEY, Associate Justice.—This is a damage suit, resulting in a verdict and judgment for the plaintiff for $400, and the defendant has appealed. The undisputed testimony shows that the plaintiff bought a round-trip ticket from Belton to Houston, Texas. It was dated November 26, 1903, and was good "for continuous return trip commencing within the final limit punched below." The original ticket has been sent up in the transcript, and the final limit punched thereon was the 29th day of November, 1903. The undisputed testimony shows that the plaintiff started on his return trip on the 29th day of November; that he made a continuous journey, and reached Temple about three or four o'clock on the following morning, and immediately took appellant's train for Belton. Shortly after leaving Temple the conductor called on him for his ticket, which he produced, but which the conductor refused to accept, because it was then the 30th day of November. The conductor demanded the payment of thirty cents fare, which the plaintiff refused; and the conductor then forced plaintiff to leave the train.

The plaintiff's testimony concerning the matter was as follows: "Soon after we started out from Temple Conductor Wilder came around to take up the tickets. He asked me for my ticket, which has been read. He took it, and handed it to me, stating that the ticket was no good. He told me I would have to pay my fare to Belton, which is thirty cents. I told him I would not do it—that I had a ticket, and considered it good. He said it was no good. 'It is limited to the 29th, which was yesterday.' I told him that [I] would not pay him any more—that I considered my ticket good. 'Well, you will either pay me thirty cents or get off the car,' he said. He then pulled the bell rope and said, 'Come on.' I got up and followed him nearly to the door, when I stopped, and told him I was not going to get off voluntarily, and that he would have to put me off. He said, 'All right; I can accommodate you.' He then caught me by the sleeve, and we walked together to the steps of the car. He then got down the steps ahead of me and helped me to the ground. He then got on the train and went on. The night was quite cool and dark, and it seemed to me that it was about a mile and a half as I had to walk back to the depot. I know where I was put off, and in my judgment it was about a mile and a half. I have [been] subject for a number of years to rheumatic pains, and suffered some in walking back, and I have suffered some since the occurrence. I felt very much humiliated and mortified in being told that, if I didn't pay my fare, I would have to get off the cars. I was sitting in the presence of a number of my friends, whom I was afraid might think, from what occurred between me and the conductor, that I was trying to ride on an improper ticket. Besides, I was talking with a man about a land trade of some importance, about which he was to meet me the next day in Belton, and about which he did meet me the next day in Belton, but failed to make a trade because we could not agree on the terms. Conductor Wilder used no abusive nor insulting language to me, but was kind and gentlemanly to me in all respects, unless you might consider the indignity put upon me when refusing to accept the ticket and demanding fare, and telling me that, if I did not pay my fare, I would have to leave the train. I came over to Belton on the next train, and saw the man that afternoon

with whom I had been talking, but failed to make the trade, as stated before.

"I took a bed at the Palmetto for the night, after walking back to the depot, which cost me fifty cents. Next morning I went to the Chinese restaurant and got breakfast, which cost me twenty-five cents. I paid twenty-five cents to come to Belton on the train. The place where I was put off was on a dump, I think, about six hundred yards from the Santa Fe Hospital. I could tell when I got in sight of the Santa Fe Hospital where I was, by the lights in the house. I could not tell exactly what time it was, but judge it was between four and five o'clock a. m."

Overruling all other assignments of error, we sustain the first and second, which complain of the verdict as excessive. We agree with his counsel and the trial court in the proposition that the plaintiff was illegally put off the train, and that he was entitled to recover damages therefor; but we regard $400 as so far in excess of the injury sustained as to make it our duty to interpose. This conclusion is reached upon the plaintiff's own testimony, and without reference to the evidence submitted by the defendant.

The plaintiff admits that the conduct of the conductor was kind and gentlemanly, and involved no indignity, unless the act of refusing to accept the ticket and demanding the payment of fare would constitute an indignity. In other words, it appears, from the plaintiff's own testimony, that the conductor, though mistaken, was acting in good faith, and that his conduct was polite and gentlemanly. The plaintiff knew where he was when he was put off, and seems to have had no difficulty in finding his way back to Temple, where he obtained accommodation at a hotel. According to his statement, he had to walk about a mile and a half in the night-time, and was entitled to reasonable compensation therefor. He was also entitled to reimbursement for the amount expended as hotel bill at Temple and railroad fare to Belton, but this did not exceed $2.

As to physical suffering the plaintiff testified: "I have been subject for a number of years to rheumatic pains, and suffered some in walking back, and I have suffered some since the occurrence." This is all the testimony submitted on that subject, and it is so meager that we do not think anything should have been allowed on that score. It seems that the plaintiff has chronic rheumatism, and felt its pains while walking back to Temple on the occasion in question, and has suffered some since that time. But he did not show that he was not suffering rheumatic pains at the time, and before he was put off the train, and there is absolutely nothing to indicate that putting him off the train caused the subsequent recurrence of rheumatic pains.

But the plaintiff testified that he was very much humiliated and mortified by being told that, if he did not pay his fare, he would have to get off the train, and that testimony warranted the jury in awarding substantial compensation for that injury; however, considering all the circumstances, it seems manifest to us that the amount awarded is grossly disproportioned to the injury sustained. The cases cited by appellee's counsel are different in essential features from this case. Texas & P. Ry. Co. v. Dennis (4 Texas Civ. App., 90), and Gulf, C. & S. F. Ry.

Co. v. St. John (13 Texas Civ. App., 260), cited on behalf of appellant, are more analogous, and in each of those cases it was held that $500, awarded by the jury, was excessive. The recent case of Railway Co. v. Berry, decided by this court, was stronger in favor of the plaintiff than this case, but it was there held that a verdict for $700 was excessive to the extent of $300.

Under the statute it is the duty of this court to indicate how much it regards the verdict as excessive, and allow an opportunity to cure the error by remittitur. In compliance with the statute referred to, and considering all the circumstances of this case as developed by the plaintiff's testimony, we conclude that the verdict is excessive insofar as it exceeds $200; and the judgment will be reversed and remanded, unless the appellee remits such excess within ten days from this date. If the excess be remitted the judgment will be affirmed.

Appellee remitted $200, and the judgment was affirmed.

*Reduced and affirmed.*